SEYFARTH SHAW LLP
Esteban Shardonofsky  (*Admitted Pro Hac Vice*)
sshardonofsky@seyfarth.com
700 MILAM STREET, STE. 1400
HOUSTON, TX 77002-2812
(713) 225-2300

Sarah Bauman (*Admitted Pro Hac Vice*)
sbauman@seyfarth.com
233 SOUTH WACKER DRIVE
CHICAGO, IL 60606-6448
(312) 460-5000

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lauren Noyes, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Raytheon Company, f/k/a Raytheon Missiles and Defense,<br><br>Defendant. | Case No. CV-24-00343-TUC-RM(MSA)<br><br>**RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff's Opposition to Summary Judgment ("Opposition") makes clear that her gender discrimination and retaliation claims are based only on unsupported assertions and mischaracterizations of the record about how Bryan Rosselli – who was not a decision-maker and not deposed in this matter – harbored (in her own words) "unconscious [gender] bias" against her. At bottom, Noyes has no admissible evidence creating any genuine issue of material fact with respect to either claim or, importantly, the question of pretext.

Noyes' discrimination claim fails because she suffered no adverse employment action. After a reorganization of the Business Execution organization, Noyes was selected – over a male candidate – for the role she sought and offered a ten percent pay raise and $150,000 retention bonus, leaving her better off. Her dissatisfaction with the role's "E2" classification is not actionable and, in any event, Rosselli had no involvement in that

1

decision. The claim is further undermined by the absence of any similarly situated male treated more favorably; in fact, other male executives, like Noyes, assumed greater responsibilities without a level increase.

Noyes' retaliation claim also fails. It rests on vague and conclusory allegations that she was excluded from certain communications and pressured by a "VP" to accept the role – "petty slights" that are not actionable under applicable law and are otherwise unsupported by the record. Accordingly, Raytheon is entitled to summary judgment.

## ARGUMENT

### I.   NOYES' SEX DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW

####    A.   Noyes Cannot Satisfy Her *Prima Facie* Burden

Noyes' Opposition confirms she cannot establish the *prima facie* elements of her claim. Opp. at 12 (conceding no direct evidence and the *prima facie* inquiry thus applies).

#####    1.   Noyes Suffered No Adverse Employment Action

As a threshold matter, the undisputed evidence demonstrates Noyes did not suffer an adverse employment action. *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 346 (2024) (an employment action is adverse if it causes "some harm with respect to an identifiable term or condition of employment"). Noyes does not dispute that, unlike several of her male colleagues who lost their jobs, she was **retained** following the Business Execution reorganization. *See* CSOF[1] ¶¶ 28, 86 & Ex. 8 thereto. She also does not dispute she was offered the Operations Excellence Executive Director role ("Operations Excellence Role") and increased pay. *See id.*

Relying on inapposite authority, Noyes instead claims she suffered an adverse employment action because Raytheon "did not promote her" and "lack of promotion is undisputedly an adverse action." Opp. at 13 (citing *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004)). *McGinest*, however, does not stand for that proposition. And, if

---

[1] "CSOF" refers to Plaintiff's Controverting and Separate Statement of Facts. Dkt. 61. "SOF" refers to Raytheon's Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment. Dkt. 51.

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

anything, the case further underscores that Noyes has not suffered any employment action that contravenes Title VII. In *McGinest*, the Ninth Circuit affirmed the district court's finding that the plaintiff established a *prima facie* case in showing "1) he was a member of a protected class, 2) applied for and was qualified for an open job, 3) was rejected for that job, and 4) rather than filling the position by promoting any of the interviewees, [the defendant] transferred a white manager into the position." *Id.* Here, Noyes has not asserted, and the record does not otherwise show, she was rejected from any role to which she applied that was filled by a male candidate. Therefore, unlike Plaintiff McGinest – who applied for an open position, was rejected, and thus suffered harm with respect to the terms of his employment – Noyes suffered no adverse action because she was offered (over a male candidate) the role she sought and a generous pay raise. CSOF ¶¶ 28, 86 & Ex. 8 thereto.

2.    No Similarly-Situated Male Was Treated More Favorably

Noyes' claim also fails because the undisputed evidence shows material differences between Noyes and her purported "comparators," none of whom were treated more favorably. *See Tavares v. ASARCO LLC*, No. CV-20-01596-PHX-SPL, 2022 WL 1811166, at *4 (D. Ariz. June 2, 2022) (citing *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010)) ("summary judgment may be granted when the undisputed evidence shows material differences"). As set forth in Raytheon's Motion and the Gibson Declaration, the five men to whom Noyes compares herself were selected for ***Vice President*** roles in different departments, each with distinct functions, duties, and qualification requirements from the Operations Excellence Executive Director role. Critically, Noyes does not contend she sought or was qualified for any of these Vice President roles.

Rather than point to evidence showing similarities between the Operations Excellence Role and any of the Vice President roles, Noyes claims these five men are similarly situated to her simply because they all reported to Bryan Rosselli. *See* CSOF ¶¶ 51-52 (objecting only on relevancy grounds under Fed. R. Ev. 401); Opp. at 14. It is axiomatic, however, that "employees' roles" "must [] be similar 'in ***all*** material respects.'" *Hawn*, 615 F.3d at 1157 (emphasis added; quotations omitted). Here, the differences among these roles are highly

3

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

relevant, as both role complexity and organizational impact are key considerations in the leveling process, along with other factors related to job responsibilities, requirements, and the department a role supports. *See* CSOF ¶¶ 20-22.

Furthermore, the cases cited in Noyes' Opposition do not establish that the mere fact employees report to the same employee creates a genuine issue of fact as to whether they are similarly situated. To the contrary, the Ninth Circuit has routinely held, "individuals are similarly situated **when they have similar jobs** and display similar conduct.'" *Hawn*, 615 F.3d at 1157 (quoting *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) (emphasis added)). Because Noyes has not offered evidence disputing the critical dissimilarities in these roles, their responsibilities and qualifications, and departments they support (CSOF ¶¶ 51-52) – differences that were key drivers of the leveling process – her discrimination claim fails.

Dismissal is further warranted because it is immaterial that these employees all reported to Rosselli, as he was not a relevant decisionmaker. *See Hawn*, 615 F.3d at 1157 (shared supervisor was not relevant to comparator inquiry because the direct supervisor was not a decisionmaker in the adverse action); *Davis v. Valon Mortgage Inc.*, No. CV-22-01510-PHX-SPL, 2024 WL 6842205, at *6 (D. Ariz. Apr. 23, 2024) (similar). As noted above, Noyes does not allege she should have been selected for a Vice President role; she claims the Operations Excellence Role should have been leveled an "E3" instead of an "E2." Here, the record shows Rosselli was not a decisionmaker with respect to the leveling. Three female employes, Kimberly Bodkin, Nancy Kennedy, and Stephanie McCallum, whom Noyes does not claim discriminated against her, graded the executive roles. SOF ¶ 18 & Ex. C (Bodkin Decl.) at ¶ 6. Bodkin specifically testified that "Bryan Rosselli was not involved in the leveling of the Operations Excellence Role." Bodkin Decl. ¶ 10.

Noyes' claim that Rosselli was involved in leveling – based on his role in creating executive positions and her incorrect assertion that the creation process was indistinguishable from leveling – is unsupported by the evidence. The most she musters is a Job Analysis Form for a Program Execution role (not the Operations Excellence Role) reflecting a ***proposed***

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

executive grade, and email correspondence between Ashley Gibson – who Noyes concedes prepared Job Analysis Forms (CSOF ¶ 13) – and another Raytheon employee, not Rosselli. CSOF ¶ 17 & Ex. 1 thereto.[2] Even setting aside that these materials are unauthenticated and contain hearsay, they do not show or even suggest that Rosselli participated in leveling the Operations Excellence Role (or any other role) at issue. This is especially so given undisputed evidence that executive roles were subject to a separate, robust leveling process conducted after their creation – one in which Rosselli had no involvement. CSOF ¶¶ 16-25.

And conspicuously absent from Noyes' Opposition is any acknowledgment of the five male executives within the Operations and Supply Chain ("OSC") organization who – like Noyes – were not offered an increase in executive level. At least two of those men were treated **_identically_** to Noyes: similarly offered a role with a broader scope[3] and pay increases to compensate them for the additional responsibilities, instead of an increase in executive level. While Noyes objects to these facts solely on the basis of relevancy (CSOF ¶ 51), this evidence is plainly relevant and material. Even assuming *arguendo* that Rosselli leveled the executive roles in OSC, five other male executives in the organization were treated no better than Noyes with respect to the leveling – the sole alleged adverse action – thus defeating her claim she was offered a lateral grade because she is a woman.

---

[2] Noyes also relies on a September 12, 2022 email exchange. CSOF ¶ 25 & Ex. 5 thereto. This does not show that Rosselli leveled executive roles, but rather shows he reviewed and approved offers to Noyes and other executives, which is not in dispute. CSOF ¶ 51.

[3] Noyes incorrectly asserts that Raytheon separated twenty-four executives within OSC, and that she and the men selected for the Vice President roles were the only executives who remained in OSC after the Business Execution reorganization. *See* Opp. at 4. That is a mischaracterization of the undisputed facts in the record. *See* ¶¶ CSOF 6-11. Raytheon separated twenty-four executives from the Business Execution organization, which encompasses OSC **along with several other organizations.** *Id.* As such, the responsibilities of the twenty-four executives who were separated were not subsumed entirely by the Operations Excellence Role and the Vice President roles. *See id.* Rather, other executives, including those two men in OSC who, like Noyes, received offers for roles with a greater scope but no increase in level, also took on responsibilities of the executives who were separated. *See id*; *see also* CSOF ¶ 51.

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

To the extent Noyes claims Raytheon's "refusal to modify the JAF to support a promotion w[as] discriminatory" (Opp. at 12), that allegation is also without merit. First, Noyes has no evidence Raytheon's refusal to revise the grade was because of Noyes' gender. Second, declaration testimony confirms that the male executive offered the Vice President of Planning and Procurement role also complained that the position should have been leveled at "E3" rather than "E2," and Raytheon refused to modify that grade as well. SOF ¶ 39, n.4. Noyes' allegations to the contrary are gross mischaracterizations of the record. She cites no evidence supporting her speculative and foundationless claim that this male executive was promoted from "E1" to "E2" "upon request" or "upon pushing back on the leveling," and the record contains no such support. *See* CSOF ¶ 31, 39.[4] Even Noyes' own deposition testimony contradicts these allegations. *See* CSOF at Ex. 4, Noyes Dep. at 114:1-115:2 (confirming that Raytheon did not modify the role from an "E2" to an "E3").

Finally, and most importantly, the only true comparator is the man who filled the Operations Excellence Role after Noyes declined it. He, too, was offered the position at an "E2" level, with a compensation package ***worth less*** than what Raytheon offered Noyes, and he was Raytheon's second-choice candidate after her. SOF ¶ 51(j). Although Noyes asserts the role "was never filled" because the male executive "did not accept" the offer (Opp. at 13), that contention is unsupported by any evidence, contradicted by the record, and, in any event, irrelevant, as it does not matter whether he ultimately accepted the position.

### B.    Noyes Has Failed to Show Pretext

Even if Noyes could establish a *prima facie* case of sex discrimination, her claim still fails because there is no evidence that Raytheon's legitimate, non-discriminatory reasons were pretextual. Raytheon has consistently maintained that the Operations Excellence Role was graded accurately under RTX's leveling criteria, and that justification is uncontroverted. Noyes does not dispute the leveling process produced a score corresponding to an "E2" grade

---

[4] Far from evidencing this male executive received an "E2" grade, Exhibit 11 to Noyes' CSOF merely lists his name alongside three other potential candidates for a different role in an undated slide deck marked "DRAFT."

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

(CSOF ¶¶ 20-24), or that Raytheon explained to her that the role would remain "E2" because it was properly classified under RTX's criteria. CSOF ¶ 39.

Noyes concedes there is no direct evidence of discriminatory animus (Opp. at 12; CSOF ¶ 44), so she must present "specific" and "substantial" circumstantial evidence that Raytheon's stated reasons are untrue or unworthy of credence. *See Ferren v. U.S. Dep't of Interior*, 166 F. App'x 917, 919 (9th Cir. 2006); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002); *Bright v. Cottonwood-Oak Creek Sch. Dist.*, 2013 WL 210847, at *3 (D. Ariz. Jan. 18, 2013). She has not met that burden. Instead, she relies on a patchwork of vague, conclusory, speculative and unsupported "facts" that are inadmissible and insufficient to establish pretext. *See* Opp. at 15-16.

First, there is no evidence Raytheon provided "inconsistent answers" regarding who handled executive leveling. Noyes relies on Raytheon's responses to Interrogatory Nos. 1 and 2, which do not identify Kimberly Bodkin or Stephanie McCallum as individuals involved in "determining the salary and benefits for the newly created executive roles." *See* CSOF ¶¶ 18, 37. But these interrogatories did not ask about leveling, which is a distinct process with its own methodologies; not simply the determination of someone's salary and benefits as a payroll function or after a performance review, for example. *See* CSOF ¶¶ 20-21. Moreover, the omission of these individuals from the interrogatory responses is not evidence of pretext, and Raytheon separately identified, as witnesses concerning RTX's leveling process, Bodkin and Nancy Kennedy (who worked with McCallum on the leveling), in its disclosures. *See* **Exhibit A** hereto, Raytheon's Initial and Amended Disclosures.

Second, Noyes has offered no evidence the leveling process is "subjective" or "subject to manipulation." Conversely, the undisputed evidence shows RTX used a pre-determined methodology to ensure objectivity and consistency among executive roles leveled within the organization. *See* CSOF ¶¶ 20-22. But even if RTX's leveling process was subjective, that alone does not demonstrate the leveling process was pretext for discrimination. *See Casillas v. U.S. Navy*, 735 F.2d 338, 345 (9th Cir. 1984) ("it has never been held that subjective evaluation by an employer is per se prohibited by Title VII").

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Third, the grade assigned to the Operations Excellence Role never changed. Exhibit 9 does not show that the role was graded "E3" "as of August 29." *See* Opp. at 16; CSOF ¶ 74 & Ex. 9 thereto. In the August 29 email, Gibson – who had no involvement in the RTX leveling process – does not even reference the Operations Excellence Role, let alone say that the role was graded an "E3." *See* CSOF at Ex. 9. In a subsequent email in the same thread, Gibson clarified: "We have decided on Lauren, but the role will be maintained as an E2 and not an E3." SOF at Ex. B-4. Thus, even assuming Gibson was referring to the Operations Excellence Role, at most, these emails suggest Gibson speculated or guessed the role would be graded an "E3," but it was classified as "E2" after it received a score through RTX's leveling process. Moreover, even if the leveling of the role had changed or could have changed, that does not support an inference of gender-based discrimination – particularly since Rosselli, the sole alleged discriminator, was not involved in the leveling process.

There is likewise no evidence the Operations Excellence Role's grade "could be changed in the future." Opp. at 16; CSOF ¶ 85. Any inference to that effect based on Exhibit 19 is speculative. In any event, the record (including CSOF Ex. 19) confirms Raytheon declined to change the role's grade. Further, whether "Raytheon has in the past changed a JAF grade based upon the wishes of the person responsible for hiring" is irrelevant to Noyes' claim Rosselli discriminated against her. This assertion is also conclusory, unsupported by the record, and lacks foundation.[5]

---

[5] Noyes claims, citing only her deposition testimony, that she "has been involved in multiple leveling exercises and, in some, Raytheon has adjusted the language of the factors used to grade the position in order to change the ultimate score, resulting in a different grade." CSOF ¶ 22. However, the cited testimony does not support this assertion. Moreover, while Noyes testified she had some involvement in leveling for **promotions** in the past, she stated she does not know if the process is the same for a promotion versus the leveling of a new position, and has not asserted that the same individuals who leveled her role were involved in or aware of alleged manipulation in prior leveling decisions or processes. SOF ¶ 19 at n.2. And she, of course, was not involved in the leveling for the OSC executive roles that were created in connection with the Business Execution reorganization. *See* SOF ¶ 19; Fed. R. Evid. 602; *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) (affirming district court's conclusion to exclude plaintiff's deposition testimony where plaintiff presented no evidence of "any basis in personal knowledge" for

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Fourth, Noyes' allegations concerning what Davis, Lozano, and Rosselli[6] allegedly told her are hearsay. *See* Fed. R. Evid. 801(c) (out-of-court statement constitutes hearsay when it is offered into evidence "to prove the truth of the matter asserted in the statement"). Even if such statements were supported by admissible evidence, they are unrelated to her gender and are also stray remarks, as these men were not involved in the leveling decision. *See Lucke v. Multnomah Cnty.*, 365 Fed. Appx. 793, 795 (9th Cir. 2010) ("statement unrelated to [plaintiff]'s sex . . . was insufficient to raise an issue of fact regarding pretext"); *Waizmann v. Sierra Pac. Power Co.*, 291 Fed. Appx. 106, 107 (9th Cir. 2008) ("Stray remarks are insufficient to demonstrate pretext.").

Noyes' final effort to scrape together alleged evidence of pretext relies on allegations that Raytheon initially offered Noyes a 3.8% raise instead of a ten percent raise. Opp. at 16. She claims it was not until after she complained about the scope of the role that she was offered a ten percent raise and a retention bonus. *Id.* at 7; 16; CSOF ¶ 82. Those allegations are mischaracterizations of the record. The only offer Noyes received was the written offer dated September 16, 2022, which encompasses the final pay and bonus/incentive offers. CSOF ¶¶ 28, 82. But even if Noyes was initially offered less compensation (she was not), this merely raises an inference that Raytheon **wanted to retain Noyes** and negotiated with her in good faith in offering her more money after she asked for it. Moreover, Noyes is not asserting a discrimination claim based on the compensation she was offered; she claims the leveling of the Operations Excellence Role was discriminatory. In any event, it is undisputed

the plaintiff's subjective belief). Further, whatever HR allegedly told her about leveling is hearsay as those were out of court statements, offered to prove the truth of the matter asserted, and made by individuals who were not involved in the relevant leveling process. *See* CSOF ¶ 79 ("HR told Lauren there is an art to designing inputs in the JAF to yield your desired labor grade outcome for a role"); Opp. at 7 (similar).

[6] Notably, Noyes does not even assert Rosselli's alleged statement – that "Raytheon did not think she cared about advancing her career" – was made by Rosselli. Rather, she claims someone told him that. *See* SOF ¶ 43 (Noyes testifying that "there was a perception" she was "fine with . . . staying at an E2 level," but that she did not know who made this statement); Opp. at 5; *see also* Fed. R. Evid. 801(c).

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

that Noyes received an offer dated September 16 inclusive of compensation amounting to a ten percent pay raise and $150,000 retention bonus. *See* CSOF ¶¶ 28, 82. Even if Raytheon offered her less money before September 16, that is not discriminatory, nor does it call into question whether it honestly believed the Operations Excellence Role was ***leveled*** accurately. *See Wilson v. Cent. Arizona Water Conservation Dist.*, No. CV-18-04216-PHX-JJT, 2021 WL 576817, at *5 (D. Ariz. Feb. 16, 2021) (no adverse employment action based on prior negotiations where the plaintiff was ultimately awarded them merit increase she requested); *see also Hicks v. Netflix, Inc.*, 2020 WL 2463380, at *7 (C.D. Cal. Mar. 19, 2020) (similar).

## II.    NOYES CANNOT ESTABLISH HER RETALIATION CLAIM

Noyes's retaliation claim fails as a matter of law because she cannot show that "but for" her complaint, she suffered a materially adverse employment action. *Univ. of Tex. SW Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

In support of her claim, Noyes relies solely on unsupported and conclusory allegations her "superiors" stopped communicating with her regarding "critical projects she was spearheading," and that a "VP pressured her" to make a decision about the Operations Excellence offer. Opp. at 17; *see also Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (a plaintiff "abandons" claims by failing to raise them in opposition to a motion for summary judgment). As a matter of law, these allegations do not rise to the level of "materially adverse" actions. *See Muldrow*, 601 U.S. at 348 (a materially adverse action is one "serious enough to dissuade a reasonable worker from making or supporting a charge of discrimination"); *Smith v. City of Mesa*, No. CV-21-01012-PHX-DJH, 2023 WL 2463819, at *11 (D. Ariz. Mar. 10, 2023) ("petty slights, minor annoyances, and simple lack of good manners" are insufficient); *McKissick v. City of Reno*, No. 3:17-cv-00458-MMD-CBC, 2019 WL 3241161, at *13 (D. Nev. July 18, 2019) (exclusion from meetings and denial of information are not adverse employment actions). This deficiency alone warrants dismissal.

In any event, Noyes offers no evidence that Rosselli (or any other "superior") stopped communicating with her, that any alleged lack of communication occurred because she complained of gender bias, or that he was even aware of her complaint. *See Lande v. Intel*

10

*Corp.*, 2025 WL 2097880, at *12-13 (D. Ariz. July 25, 2025) (no causation absent evidence the alleged wrongdoer knew of the protected activity). As for the alleged statements by the "VP," they are conclusory and inadmissible hearsay. *See* Fed. R. Evid. 801(c); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("conclusory  statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment").

## III.    NOYES IS NOT ENTITLED TO PUNITIVE DAMAGES

Finally, Noyes – whose case hinges on an "unconscious bias" theory – is not entitled to punitive damages. There is no evidence from which a reasonable juror could conclude that Rosselli (or anyone else) acted with "malice" or "reckless indifference" to her protected rights. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535-36 (1999). Her conclusory assertions regarding another employee's salary do not alter this conclusion, as they do not demonstrate any intent to violate federal law. *Compare* Opp. at 18 *with Finley v. United Parcel Serv., Inc.*, No. CV-16-00055-PHX-ROS, 2018 WL 6422082, at *20 (D. Ariz. Mar. 30, 2018) (quotations omitted) ("Malice and reckless indifference pertain to the employer's state of mind . . . and require evidence that the employer knew it may be acting in violation of federal law, not merely that it was aware of or engaged in discrimination.").

**<u>CONCLUSION</u>**

For the forgoing reasons and those stated in Raytheon's Motion for Summary Judgment and accompanying Rule 56.1 Statement of Undisputed Material Facts, Raytheon respectfully requests the Court enter judgment in its favor and against Plaintiff Lauren Noyes, dismiss all her claims in their entirety with prejudice, and award such further relief as the Court finds just.

DATED:  May 26, 2026                    Respectfully submitted,

SEYFARTH SHAW LLP


By:   */s/ Esteban Shardonofsky*
Attorney for Defendant

11

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**PROOF OF SERVICE**

I hereby certify that a true and correct copy of this document was served on the following counsel via the Court's ECF system on May 26, 2026.

Barney M. Holtzman
MESCH CLARK ROTHSCHILD
259 North Meyer Avenue
Tucson, Arizona 85701
Phone: (520) 624-8886
Fax: (520) 798-1037
Email:   BHoltzman@mcrazlaw.com
         ecfpima@mcrazlaw.com

***Attorney for Plaintiff***

/s/   *Esteban Shardonofsky*
Esteban Shardonofsky

RAYTHEON'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT